## WILLIAM OFFUTT *v.* CHARLES A. EDWARDS.

Where an attachment has been obtained, under the 7th section of the act of 7 April, 1826, by a plaintiff whose debt is not yet due, on making oath that his debtor is about to remove his property out of the State before his debt becomes due, and swearing to the other facts required by that act, evidence will be admissible, on the part of the defendant, to prove conversations and declarations of the latter, made out of the presence of the plaintiff, previous to his leaving the State, and a short time before the attachment, with a view to show that his removal from the State was not intended to be permanent.

Where an affidavit is made that a defendant has left the State with a view not to return, his subsequent return will not, alone, be sufficient to dissolve the writ, where circumstances render it probable that the original intention was not to return; otherwise, where nothing suspicious existed, or where an intention to return is proved.

Where an affidavit is made for an attachment, some *prima facie* proof must be adduced by the defendant that the facts sworn to are not true, to throw the burthen of proving their truth on the plaintiff.

Where an attachment has been taken out under the act of 7 April, 1826, but under circumstances that did not justify it, the defendant is entitled to compensation for any injury he may prove that he has sustained thereby, and for the trouble and expense to which he may have been subjected. He may also recover what he has paid for professional services in dissolving the attachment; but not the fees of the counsel employed to prosecute his claim for damages. His right to damages for injury to his reputation and credit, depends upon the motive of the plaintiff; if it were the

Offutt v. Edwards.

purpose of the latter, without probable cause, to injure or harrass him, the damages should be exemplary; *aliter*, if no other motive induced the proceeding, than an honest desire to secure the payment of a just debt.

The remedy by attachment is a harsh and severe one, and should not be resorted to but in case of actual necessity.

APPEAL from the District Court of St. Landry, *Boyce*, J.

GARLAND. J. In the month of March, 1843, the plaintiff sold to the defendant a tract of land for $1,387 50, payable in four instalments, the last in the month of March, 1846. On the 12th of October, 1843, the plaintiff, proceeding under the act of the Legislature, which authorises an attachment in certain cases, although the debt be not due, commenced this suit on four promissory notes, and an act of sale and mortgage, making affidavit that the defendant was about permanently to leave the State, and was about to remove his property, also, before the debts became due, whereupon an attachment was issued, and the tract of land and several slaves were attached, and taken into possession by the sheriff. In ten or twelve days after the seizure, the defendant released his slaves, by giving bond and security, as required by law, and, at the next term of the court, filed his answer, averring that it was not true that he intended to leave the State permanently, or that he was about to remove his property before the debts claimed became due. He further alleged, that the proceedings of the plaintiff were vexatious and oppressive, and that he had suffered damage to the amount of $1000 in consequence of them, arising from the seizure and detention of the slaves, and the loss of his crop, or a great part thereof, and the expense incurred in saving it; also, from the injury to his credit and reputation, said proceedings having caused persons to suspect that he was unwilling, or unable, to pay his debts. Wherefore he prayed that the attachment might be dissolved, and that he might have judgment against the plaintiff for $1000, and costs.

No exception was made to the demand in reconvention. The cause was tried by a jury, and a verdict for $500 damages was given against the plaintiff, who, after an inaffectual aplication for a new trial, has appealed.

The evidence shows that in March, 1843, the defendant pur-

chased of the plaintiff and one Woods, two adjoining tracts of land, and shortly after returned to Mississippi, of which State he was a native, from whence he brought from fifteen to twenty slaves, and commenced clearing the land, and preparing to make a crop of corn, and to build cabins. He did not bring his wife with him at first, having no house to live in. In the course of the spring and summer defendant went to Mississippi several times, remaining from two to six weeks, his wife and child being there, he also being the administrator of his deceased father's estate, which was not finally settled; but, at the same time, he always expressed an intention to remain in this State. About the month of September, the defendant hired several of his slaves to different persons in his neighborhood; he sold the crop of corn he had made; and agreed with a neighbor and relative, to let him have some timber he had prepared to build a house, also some rails, upon condition of the same being returned in kind, when wanted. The reasons given for these arrangements were, that he, defendant, intended to obtain a situation as overseer on some plantation for two years, which would, with the hire of his slaves, enable him to pay more easily for the land he had purchased.

On the part of the plaintiff, in addition to the above facts, it was proved that the defendant, a short time before the attachment, expressed some apprehension that, in consequence of the situation of his father's estate, and of some losses, that he would not be able to meet the payments for the land he had purchased, and stated, that if Woods pressed him for payment, and had the land sold under an execution, and it should not pay the debt, then he might look out for property to pay the balance, "as he" defendant "was not born yesterday." It is not proved that this conversation was repeated to the plaintiff previous to the attachment, although it was to Woods; nor is any effort, or attempt to remove the slaves, disclosed by the testimony. As soon as the defendant heard of the attachment, which was in a few days, by a special messenger, he returned home, bringing his wife and child with him. During his absence, one of his brothers, with a few slaves, remained on the place, to take care of it, and to assist in preserving the crop. The property attached

was the tract of land originally sold by plaintiff to defendant, two negro women with three small children, a woman about nineteen years old, and a small boy and girl. The evidence shows that they were in the custody of the sheriff about twelve days, and that the services of each woman were worth about $10 per month. About sixty barrels of corn, worth $30, is shown to have been destroyed by animals getting into the field, in conquence of the negroes having been taken away. The other slaves belonging to the defendant were hired out, and not disturbed.

The first question to which our attention is called, is presented by a bill of exceptions to the opinion of the judge, admitting as evidence the statements of various witnesses, as to the conversations had with the defendant, and his declarations, made out of the presence of the plaintiff, previous to his leaving the State, a short time before the attachment. As a general rule, it is clear that such testimony is inadmissible; but in a case like the present, we cannot say that the judge erred. The basis of the plaintiff's claim for his attachment, is the absence of the defendant from the State. That absence is not denied; the plaintiff wishes to show that it was intended to be permanent, and to induce that conviction, proves that the defendant had sold his crop of corn made in 1843; that he had disposed of the timber which he had prepared to build a house; had abandoned the avowed intention of building a gin-house; and, by other acts, had manifested an intention to break up his plantation. It was, therefore, proper to permit the defendant to show his motive in doing these acts, and his declarations made to his neighbors, under circumstances and at a time not suspicious, explanatory of the causes which induced him to do these things, were, in our opinion, admissible as evidence, and should have been leftto the jury to be considered, the judge taking care to caution and instruct them, as to the character of such evidence, and the risk of giving implicit credence to it, when attended by suspicious circumstances.

Where an affidavit is made, that the defendant has left the State with an intention not to return, his subsequent return will not alone be sufficient to dissolve the writ, where there are

circumstances which render it probable that the original intention was not to return. It is otherwise, where nothing suspicious existed, or where an intention to return was proved. 1 Rob. 231. 3 Ib. 363. In the 16 La. 341, it was held, that after an affidavit is made for an attachment, some *prima facie* proof must be made by the defendant that the facts sworn to are not true, in order to throw the burden of proving their verity on the plaintiff. The affidavit has a greater affect than merely enabling the party to obtain process against the defendant.

Without entering into any argument upon the facts of this case, we are of opinion that the plaintiff was not justified in taking out the attachment under which the defendant's property was seized ; and, as the parties have thought proper to go into the question of damages in this suit, we are of opinion that the defendant should be compensated for the injuries he has sustained. But an examination of the evidence induces as to beleive that the jury has estimated them at two high a rate. About sixty barrels of corn are said to have been destroyed, worth fifty cents per barrel. Not more than four of the slaves seized, could render any services of value ; they were detained about twelve days, and the highest estimate set upon their service is ten dollars per month. The defendant was obliged to come twice to the court-house, a distance of about twenty-five miles from his residence, to get his slaves released, and had to give security. For his losses and trouble, he should be liberally remunerated. He would also, probably, be entitled to recover what he may have paid for the professional services of counsel engaged to aid him in dissolving the attachment ; but in estimating them, the jury should not take into consideration the services of counsel in prosecuting the claim for damages, which, we think, was probably done in this case.

The counsel for the defendant contends, that he should recover vindictive damages, for injury to his reputation, credit, &c. That depends entirely upon the question of motive in the plaintiff. If it were his purpose, without probable cause, to injure, oppress, or harrass the defendant, then we are of opinion, that the damages should be exemplary. The remedy by attachment is a severe and harsh one, and should not be resorted to except in

cases of actual necessity ; but parties who do resort to it, should not be compelled to do more than repair the injuries or damage they cause, unless it shall appear that some other motive induced the proceeding than a honest desire to secure the payment of a just debt. In this case we are unable to discover any malicious motive in the plaintiff. He has hastily resorted to a harsh, but legal remedy, without sufficient legal cause, and he should pay for it ; but in assessing the damages, the jury should have been careful not to have made a victim of one of the parties, in their efforts to rescue and indemnify the other. We are of opinion that the damages are excessive, and we we must grant the party relief by a new trial.

The judgment of the District Court is, therefore, annulled and reversed, the verdict set aside, and the case remanded for a new trial, with instructions to the judge, in the trial thereof, to conform to the principles herein stated, and otherwise to proceed according to law ; the appellee paying the costs of this appeal.

*Swayze* and *Taylor*, for the appellant.

*T. H.* and *W. B. Lewis*, for the defendant.