On Application for Rehearing.
Miller, J.
The argument on the part of the plaintiff in support of the attachment is in great part addressed to the suspension of payment of the debtor, which, with other circumstances, is supposed to afford a basis for the attachment. Nothing is better settled than that attachments are stricti juris. Until the act of 1868 the causes to authorize the writ were restricted to non-resident debtors, or the ' debtor about to absent himself permanently, or concealing himself to avoid citation. The act of 1868, now part of Art. 240, C. P., supplied the causes for the writ when the debtor has mortgaged, assigned or disposed of his property, or is about to mortgage, assign, or dispose of his property with intent to defraud creditors, or give unfair preferences, or when he has converted or is about to convert his property into money or evidences of debt with intent to place it beyond the reach of his creditors. The affidavit in this case for the attachment was made under that portion of the article embodied in it from the act of 1868, substantially charging the defendant with converting his property into cash with the design of defrauding his creditors. The prominent question in the case, of course, is as to the right to attach.
It is to be accepted that while the affidavit calls on the defendant for some prima facie proof to negative the fraudulent design to him, whenever that proof is given the burden is on plaintiff to sustain the affidavit. 9 Rob. 90. There is another rule equally well settled in the administration of the proof required of the plaintiff in support ■of the burden the law casts on him. He must refer to the state of facts existing when he issues the writ, for it is on the then existing condition the creditor bases his affidavit. Now, with these rules in view, on what basis did this writ issue? The debtor had suspended payment, announced his inability to pay his debts and solicited an *1343 extension of time. He continued his business and was selling in the usual course. If to this is added the circumstance that he had ordered and received the plaintiff’s merchandise about a month before his proposition to his creditors, and the fact that his proposition for an extension was conditioned on the acceptance of all his creditors to be binding on any, we have the condition of facts on which plaintiffs based their oath that defendant was fraudulently converting his property. It is true that on this branch of the case we have supplemented the discussions in plaintiff’s brief of asserted dishonest failures of the defendant years ago, which it can hardly be seriously contended can afford any aid in the solution of the question before us.
As we appreciate the argument of plaintiff’s counsel, it is substantially that a debtor’s announced failure to pay, with his actual suspension and the continued sale of his goods without any surrender of his property, authorizes an attachment of his property. This argument might have weight addressed to' the legislative department, but surely can not prevail with the court charged only with the application of the laws on the statute book. It said that suspension is failure in the ordinary and legal sende, yet failure wherever it occurs in the Code means a surrender. See elaborate discussions in Citizens Bank vs. Seixas, Syndic, 38 An. 424. Again it is urged that under the Code of Practice one who has petitioned for stay of proceedings and a meeting of his creditors may be subjected to the writ of sequestration when it is feared that availing of the stay he will place his property beyond the reach of his creditors. But defendant did not apply for the benefit of the insolvent laws, and because the law authorizes a sequestration in the given ease it does not sanction an attachment in the case here. The law in the case of the debtor who suspends payment of his debts, but does not surrender his property, leaves his creditors the usual remedy of suit, judgment and execution, or the remedy to compel a surrender .and an attachment if the debtor commits any of the acts of fraud specified in the Code. We can not, therefore, assent to the proposition that suspension of payment is failure in the sense of the Code, or that failure merely, whether in the legal or popular sense, authorizes the writ of attachment; or that suspension, not followed by a surrender, the debtor proposing a compromise not acceded to and continuing his business as usual, affords a basis for the writ. The attach *1344 ment is permitted only when there are the specific acts of fraud or manifesting the fraudulent intent expressed in the act of 1868. Our courts have constantly held that attachments of this character must have the basis of some act of the debtor, clearly bringing him within the scope of this statute of 1868 enlarging our law of attachments. If we were to hold that a suspension of payment not followed by a surrender, the debtor continuing his business and selling his goods with all the qualifications suggested in plaintiff’s argument, authorized an attachment, in our view it would be at variance with the jurisprudence that attachments are strieti juris, and when questioned must be brought clearly within the statute. Suspension of payment with all the circumstances stated is not equivalent to the debtor converting his property with fraudulent intent, and to so hold would be in our view to give an unwarranted construction to a statute specific and limited in its terms. We have given the plaintiff’s case consideration in all its aspects, due to its importance and the ability with which it has been presented, but are constrained to hold there was no basis for the attachment. 24 An. 82, 484; 26 An. 258, 641; 30 An. 394; 32 An. 340.
On the part of defendant we are asked to give a rehearing and increase the damages. On this branch of the case we are confronted with our fixed jurisprudence restricting damages in cases of the dissolution of attachments There is a disposition of debtors in such cases to overestimate their injury. This ease we think furnishes an example. The attachment was for a debt of twelve hundred dollars against debtors possessed, according to their statement, of large means, but temporarily embarrassed. There was no attempt to bond. Mercantile credit is apt to be affected by a circular announcing inability of the merchant to pay his debts. We find it difficult to appreciate that the debtor, being already in a condition of declared inability to meet his engagements, could be injured appreciably by an attachment for a comparatively small amount. It is claimed here that the issue of this writ and seizure under it caused damages to the amount of thirty-seven thousand dollars, made up mainly of supposed injury to credit, and worry and annoyance caused the debtor. Wó are not impressed with this theory of damage. The law has wisely in this class of cases excluded from recovery as damages injury to feeling and supposed wrongs to credit, unless malice is proved. The law will not mulct *1345 in damages one who sues without cause, but at the same time without malice. It applies the same rule in cases 'of dissolution of attachments, and, unless malice is proved, refuses all except actual damages, usually understood to be attorney’s fee for dissolving the attachment and injury to the property attached. In this case we can find no basis to attribute to the creditor a malicious motive in suing out his attachment. He could gain nothing by an abortive attachment. He acted under the advice of experienced counsel, who relied on that construction of our attachment laws he has endeavored to sustain before us. There was, we think, no malice. Our judgment allows two hundred and fifty dollars for dissolving an attachment for twelve hundred dollars, and all that we think can be claimed as actual damages. See 13 An. 440; 20 An. 66; 28 An. 592.
We are constrained to adhere to our judgment in this case.